UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SUSANN R.,

                              Plaintiff,                          6:20-CV-6670Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____


## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #19.


## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), with the Social Security Administration ("SSA"), on December 2, 2016, alleging disability beginning December 2, 2015, at the age of 44, due to a history of seizures, HIV, nerve damage in both ankles, sciatica, shooting pain, bone spurs in hips, difficulty walking and standing, anxiety, depression, Post Traumatic Stress Disorder ("PTSD"), and difficulty sleeping. Dkt. #14, pp.77-78.

On June 27, 2019, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Victor Alberigi, at an administrative hearing before Administrative Law Judge ("ALJ"), William Ramsey. Dkt. #14, pp.49-76. Plaintiff testified that she possessed a GED and had completed three semesters at college. Dkt. #14, p.55. She graduated from the PROS program.[1] Dkt. #14, p.62. She lives in an apartment with a roommate and cares for two dogs and three cats. Dkt. #14, pp.57-58. She experiences pain in her lower back shooting down her legs and cannot stand for more than 10 minutes or sit for more than a half hour before she needs to change positions and lay down within an hour. Dkt. #14, pp.58-59. She can wash dishes and laundry. Dkt. #14, p.61. Her pain medication makes her sleepy. Dkt. #14, p.65. She cannot lift more than ten pounds. Dkt. #14, p.67. She is most comfortable in a recliner with her feet elevated. Dkt. #14, p.68. As a result of past head trauma, she gets sidetracked very easily and forgets words and has difficulty retaining information. Dkt. #14, pp.69-70. She becomes anxious around people she does not know and worries constantly. Dkt. #14, p.70.

When asked to assume an individual with plaintiff's age, education and absence of past work experience who could perform the full range of sedentary work but could never climb ladders or be exposed to extreme temperatures, fumes, odors,

---

[1] The Personalized Recovery Oriented Services ("PROS"), program is a comprehensive model that integrates rehabilitation, treatment and support services for individuals with serious mental illnesses, with a goal of promoting independence and improving quality of life through, *inter alia*, social and basic life skills training, problem solving and coping skills, housing assistance, vocational training, clinical counseling, health assessment, symptom monitoring and medication management. www.omh.ny.gov

dust, gases and poor ventilation and could only occasionally push and pull with both lower extremities or interact with the public, coworkers and supervisors, and was limited to simple, routine and repetitive tasks with only occasional decision making and changes in the work environment, the VE testified that plaintiff could work as a lamp shade assembler, final assembler of optical goods and envelope addresser, each of which were unskilled, sedentary exertion positions. Dkt. #14, pp.72-73.

The ALJ rendered a decision that plaintiff was not disabled on July 30, 2019. Dkt. #14, pp.15-44. The Appeals Council denied review on July 6, 2020. Dkt. #14, p.4. Plaintiff commenced this action seeking review of the Commissioner's final decision on September 4, 2020. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant seeking SSI must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful

-4-

activity since the application date of December 2, 2016; (2) plaintiff's PTSD, depressive disorder, cocaine use disorder, lumbar degenerative disc disease with radiculopathy and obesity constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform sedentary work[2] with the following limitations: occasional climbing of ramps and stairs, but never ladders, occasional balancing, stooping, kneeling, crouching and crawling and occasional pushing and pulling with either lower extremity, occasional interaction with the public, coworkers and supervisors, occasional decision making and changes in work environment, simple, routine and repetitive tasks and moderate exposure to temperatures, fumes, odors, dust, gases and poor ventilation and hazards; and (5) plaintiff was capable of working as a lamp shade assembler, final assembler of optical goods and envelope addresser, each of which were unskilled, sedentary exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #14, pp.20-44.

Plaintiff argues that the ALJ ignored opinion evidence from consultative examiner Harbinder Toor, M.D., and Infectious Disease Specialist, Anja Bottler, M.D., that plaintiff has moderate limitations for extended sitting. Dkt. #15-1, pp.11-14. Plaintiff

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
20 C.F.R. § 416.967(a).

argues that, in addition to her own testimony, multiple medical providers noted plaintiff's sitting limitations. Dkt. #15-1, pp.17-18. Moreover, plaintiff argues that the ALJ erred in crediting Dr. Bottler's opinion with respect to her mental limitations while discrediting Dr. Bottler's opinion that plaintiff's functional capacity would be limited by fatigue. Dkt. #15-1, pp.14-15. Plaintiff notes that numerous medical professionals discuss plaintiff's fatigue. Dkt. #15-1, p.15.

The Commissioner responds that the ALJ properly determined that plaintiff retained the functional capacity to perform sedentary work, including the capacity to sit for six hours, as determined by the state agency physician, A. Vinluan, M.D. Dkt. #16-1, pp.6-8. The Commissioner further responds that the ALJ properly considered plaintiff's subjective reports of difficulties sitting, which were not medical source opinions. Dkt. #16-1, pp.8-9. In any event, the Commissioner notes that sedentary work does not require individuals to sit for six hours at one time. Dkt. #16-1, pp.9-10. Furthermore, the Commissioner argues that the medical record does not support a determination that plaintiff's fatigue was so extreme as to preclude sedentary work. Dkt. #16-1, pp.10-11. Finally, the Commissioner argues that it was appropriate for the ALJ to accept Dr. Bottler's opinion regarding her area of expertise, *to wit*, plaintiff's HIV, while disregarding limitations which were unsupported by her treatment notes. Dkt. #16-1, pp.15-16.

An ALJ is required to consider and evaluate every medical opinion received, regardless of its source. 20 C.F.R. § 416.927(c). Generally speaking, the ALJ

will afford more weight to the opinion of a treating physician because he or she is most able to provide a detailed, longitudinal picture of the plaintiff's medical impairment and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. *Moscatello v. Saul*, 18-CV-1395, 2019 WL 4673432, at *11 (S.D.N.Y.Sept. 25, 2019), *citing* 20 C.F.R. § 416.927(c)(2). Thus, where the treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be afforded controlling weight. *White v. Saul*, 414 F. Supp.3d 377, 383 (W.D.N.Y. 2019), *quoting* 20 C.F.R. § 404.1527(c)(2). The ALJ may afford less than controlling weight to a treating physician's opinion if it fails to meet this standard, but is required to provide good reasons for the weight assigned upon consideration of, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015). If the ALJ fails to provide a sufficient basis for discrediting the opinion of a treating physician, remand is required. *Id.*

The opinion of a treating physician is not entitled to controlling weight if it contains internal inconsistencies or contradicts the treating physician's treatment notes. *Monroe v. Cimm'r of Soc. Sec.*, 676 Fed. App'x 5, 7 (2d Cir. 2017). Moreover, the opinion of a treating physician need not be given controlling weight if it is not consistent with other substantial evidence in the record, including the opinions of other medical

experts, such as a consulting physician. *Halloran v. Branhart*, 362 F.3d 28, 32 (2d Cir. 2004); *See Baszto v. Astrue*, 700 F. Supp.2d 242, 249 (N.D.N.Y. 2010) (ALJ may rely upon the opinion of examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability). The factors to be considered in evaluating opinions from non-treating medical sources are the same as those for assessing treating sources, except that the first factor is replaced with consideration of whether the non-treating source examined the plaintiff. *White*, 414 F. Supp.3d at 383.

Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in his decision, the ALJ is entitled to weigh all of the evidence available to make a residual functional capacity finding that is consistent with the record as a whole. *Trepanier v. Comm'r of Soc. Sec.*, 752 Fed. App'x 75, 79 (2d Cir. 2018); *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). While the ALJ is not obligated to explicitly reconcile every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the record to support her conclusions. *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995). A plaintiff is entitled to understand why the ALJ chose to disregard portions of medical opinions that were beneficial to her application for benefits. *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006).

When determining a plaintiff's RFC, an ALJ is required to take reports of pain and other limitations into account, but is not required to accept subjective complaints without question. *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant. *Poole v. Saul*, 462 F. Supp.3d 137, 157 (D. Ct. 2020). More specifically, in evaluating the intensity, persistence and limited effects of a claimant's symptoms, the ALJ must consider several factors, including: (1) daily activities; (2) location, duration, frequency and intensity of the pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness and side effects of medication; (5) treatment, other than medication; and (6) other measures used to relieve pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *7-8 (S.S.A. Oct. 25, 2017). An ALJ is not required to explicitly discuss each factor, but the basis for an ALJ's decision to reject a claimant's testimony regarding the extent of pain must be set forth with sufficient specificity to permit intelligible review of the record. *Franklin v. Saul*, 482 F. Supp.3d 250, 266 (S.D.N.Y. 2020). It is the function of the Commissioner, not the Court, to resolve evidentiary conflicts and appraise the plaintiff's credibility. *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

As an initial matter, the ALJ properly determined that the opinion of plaintiff's infectious disease specialist, Anja Bottler, M.D., with regard to plaintiff's capacity for sitting, standing, walking, carrying and handling of objects, was entitled to little weight because Dr. Bottler's medical source statement specifically indicates that

plaintiff had no HIV related symptoms and that her multiple other issues were treated by plaintiff's primary care physician. Dkt. #14, p.289. As the ALJ recognized, there is no notation in Dr. Bottler's treatment notes of plaintiff's complaints of fatigue, or any support for her checking of boxes indicating that plaintiff's sitting, standing, walking, carrying and handling of objects was limited by fatigue. Dkt. #14, pp.38, 238-241, 289-290 & 1508-1721. Contrary to plaintiff's assertion, it is permissible for an ALJ to give different weight to different parts of a medical opinion. *Pappas v. Saul*, 414 F. Supp.3d 657, 674 (S.D.N.Y. 2019).

The ALJ afforded great weight to the opinion of state agency medical consultant A. Vinluan, M.D. Dkt. #14, p.39. Dr. Vinluan reviewed the record, including the consutative examination report of Harbinder Toor, M.D., and determined that plaintiff could sit, with normal breaks, about 6 hours in an 8-hour work day; stand for a total of 2 hours; and occasionally lift and carry 10 pounds, climb ramps, stairs and ladders, stoop, kneel, crouch and crawl. Dkt. #14, p.84.

Dr. Toor examined plaintiff on March 8, 2017 and observed that plaintiff appeared to be in moderate pain, with a slight limp to the right side. Dkt. #14, p.293. Dr. Toor observed difficulty with heel to toe walking and 20% squat. Dkt. #14, p.293. Plaintiff had difficulty getting on and off the examination table and rising from a chair. Dkt. #14, p.293. Upon examination, Dr. Toor observed that

> Lumbar spine shows forward flexion to 20 degrees, extension 0 degrees, lateral flexion and lateral rotation 30 degrees bilaterally. SLR positive both sitting and supine

> bilaterally at 30 degrees. Full ROM of shoulders, elbows, forearms, and wrists bilaterally. Full ROM of hips and knees bilaterally. Tenderness in the hips more on the right than the left. Right ankle plantar flexion 10 degrees and dorsiflexion 10 degrees. Tenderness and slight swelling in the right ankle. Left ankle normal movement.

Dkt. #14, p.294. Dr. Toor opined that plaintiff had moderate to marked limitation standing, walking, bending, lifting, and carrying, as well as a moderate limitation for "sitting a long time." Dkt. #14, p.295.

The ALJ afforded Dr. Toor's opinion significant weight, but found nothing in the record to support marked limitations, noting that plaintiff's own reports reveal that she is able to stand, walk, bend, lift and carry sufficiently to perform activities of daily living. Dkt. #14, p.38. The ALJ also discerned "nothing to support any limitations in the [plaintiff's] ability to sit." Dkt. #14, p.38.

The Court does not find Dr. Vinluan's opinion that plaintiff could sit, with normal breaks, about 6 hours in an 8-hour work day incompatible with Dr. Toor's opinion that plaintiff had a moderate limitation for sitting a long time. "A person need not be capable of sitting for six continuous hours to perform sedentary work; rather, he or she need only be able to sit for two-hour increments during the workday." *Kimberly H. v. Comm'r of Soc. Sec'y*, 19-CV-6766, 2021 WL 1054373, at *4 (W.D.N.Y. March 19, 2021). As a result, an assessment of moderate to marked limitations for prolonged sitting is consistent with a finding that a plaintiff can perform sedentary work. *Id.*

-11-

The Court notes that plaintiff did report increased pain if sitting for more than a half hour to her primary care physician on April 28, 2017 (Dkt. #14, p.1856), and thereafter consistently reported increased pain if sitting more than 1 hour to both Dr. Bolduc and Orthopedic surgeon, Daniel Day, DO. Dkt. #14, pp.1733, 1822, 1856, 1900, 1942, 1945, 1968. Moreover, in her administrative hearing testimony, plaintiff stated that she cannot sit for more than a half hour before she needs to change positions and that she is most comfortable in a recliner with her feet elevated. Dkt. #14, pp.58-59 & 68. However, the ALJ appropriately considered plaintiff's non-compliance with treatment recommendations and prescribed medication and reports of improvement when compliant, as well as her self-medication with illegal substances, before concluding that her reports of limitations did not prevent her from meeting the sitting requirements for sedentary work.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #15), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #16), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**   **Buffalo, New York**
              **March 31, 2022**

                                       s/ H. Kenneth Schroeder, Jr.
                                       **H. KENNETH SCHROEDER, JR.**
                                       **United States Magistrate Judge**